```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
JI DONG CHENG,                                                    :
                                                                  :
                                        Plaintiff,                :    MEMORANDUM DECISION
                                                                  :    AND ORDER
                        - against -                               :
                                                                  :    20-cv-1551 (BMC)
HSBC Bank USA, N.A.,                                              :
                                                                  :
                                        Defendant.                :
                                                                  :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Defendant moves to compel arbitration of this case, brought by plaintiff under the Electronic Fund Transfer Act and several state law causes of action. Because the scope of the relevant arbitration clause does not embrace the claims at issue, the motion is denied.

## BACKGROUND

Plaintiff opened a savings account with defendant bank by online application, which required him to agree to HSBC's Rules for Consumer Deposit Accounts (the "Master Agreement"). Of relevance to this case, the Master Agreement's introductory section provides:

> Any *Terms and Charges Disclosure* applicable to your account is also a part of the Agreement. By signing a contract to open any deposit account or by using a Bank product or service, you agree that these Rules, as amended from time to time, shall apply to all your deposit accounts. If there is a conflict between these Rules and something one of our employees says, the Bank will follow these Rules.

There is no arbitration clause in the Master Agreement. It does, however, contain a jury waiver provision in all-capital letters:

> YOU AND THE BANK AGREE TO WAIVE THE RIGHT TO TRIAL BEFORE A JURY IN ANY ACTION FOR ANY CLAIMS THAT MAY ARISE FROM OR RELATE TO YOUR DEPOSIT ACCOUNT INCLUDING, BUT NOT

LIMITED TO, CONTRACT, NEGLIGENCE, USE, ATTORNEYS-IN-FACT, RESTRAINT AND EXECUTION.

According to defendant's Terms and Charges Disclosures, "[i]nterest begins to accrue on the Business Day you deposit noncash items," which are instruments like checks and wire transfers. That same document defines "Business Day" as "every day except Saturday, Sunday and Federal holidays." Like the Master Agreement, the Terms and Charges Disclosures also does not contain an arbitration clause.

On Friday, May 31, 2019, plaintiff transferred $100,000 to his account with defendant through an Automated Clearing House ("ACH") network. Plaintiff alleges, however, that defendant "did not apply interest on [the] account until, at the earliest, Tuesday, June 4, 2019." Further, on Tuesday, November 26, 2019, plaintiff made another $100,00 ACH transfer to the account, but defendant "did not apply interest on [the] deposit until, at the earliest, Friday, November 29, 2019.

Upon plaintiff notifying defendant of the alleged delay in applying interest to his deposits, defendant responded that it is not its policy to apply interest to deposits until 3-5 business days after they are made. Plaintiff claims that this policy is contrary to the representations contained in defendant's Terms and Charges Disclosures, made binding by the Master Agreement, which states that interest begins to accrue on the same business day funds are deposited. He thus filed this putative class action for violations of the Electronic Fund Transfer Act and New York General Business Law § 349, as well as for breach of contract.

Defendant moves to compel the parties to arbitrate this dispute, citing the arbitration clause in the separate Electronic Balance Transfer Service Agreement ("Service Agreement"), which plaintiff signed at the time he opened his account. The Service Agreement "authorize[s] HSBC to provide an Electronic Balance Transfer Service ("Service") using CashEdge Inc.

2

("service provider") to debit the bank account indicated on the . . . application form." Unlike the Master Agreement and the Terms and Charges Disclosures, the Service Agreement *does* have an arbitration clause, which provides, in relevant part:

> If either of us has any dispute or disagreement with the other regarding this Service that we cannot resolve amicably, both parties agree that the sole and exclusive remedy shall be binding arbitration in accordance with the then-current rules and procedures of the American Arbitration Association.

According to defendant, because plaintiff's claims deal with the timing of electronic deposits, "the evidence which HSBC will submit in support of its defense will necessarily 'touch on'" the substance of the Service Agreement, and therefore must be arbitrated.

## DISCUSSION

The Federal Arbitration Act ("FAA") states that "a written provision [in a contract]. . . to settle by arbitration a controversy thereafter arising out of such a contract . . . shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. To that end, "a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding." McMahan Secs. Co. L.P. v. Forum Capital Mkts. L.P., 35 F.3d 82, 85 (2d Cir. 1994); see 9 U.S.C. § 3. Moreover, because the FAA expresses "a liberal federal policy favoring arbitration agreements," the Supreme Court has instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

The Second Circuit has developed a four-step inquiry to determine whether all or part of a dispute should be sent to arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of

3

the proceedings pending arbitration.

See JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75-76 (2d Cir. 1998)). Only the second step – the arbitration agreement's scope – is at issue in this motion.

To determine whether a particular dispute falls within the scope of an agreement's arbitration clause, a court should undertake a further three-part inquiry. "First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001). Second, "if reviewing a narrow clause, the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." Id. (quoting Rochdale Vill., Inc. v. Pub. Serv. Emp. Union, 605 F.2d 1290, 1295 (2d Cir. 1979)). "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." Id.

Third, and alternatively, if the matter being litigated is collateral to an agreement with a broad arbitration clause, the court still needs to discern whether the matter is beyond the purview of that agreement. See id. But unlike a narrow arbitration clause, "[w]here the arbitration clause is broad, 'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" Id. (quoting Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995)).

Regarding the first inquiry, an arbitration clause is broad if "the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse

for disputes connected to the agreement containing the clause." An arbitration clause is narrow, if the "arbitration was designed to play a more limited role in any future dispute." Id. at 225. Perhaps the most telling clue in this regard is the expansiveness of the arbitration clause's language. Phrases like "[a]ny claim or controversy arising out of or relating to this agreement" or "all differences arising between the parties to this agreement as to interpretation, application or performance" are classic examples of broad clauses. See id. at 225; Collins, 58 F.3d at 18; Abram Landau Real Estate v. Bevona, 123 F.3d 69, 71 (2d Cir. 1997).

However, even if an arbitration clause uses such sweeping language, it may still be considered narrow given the surrounding context. For example, in Borecki v. Raymours Furniture Co., No. 17-cv-1188, 2017 WL 5953172, at *2 (S.D.N.Y. Nov. 28, 2017), the court recognized that although the contract included "phraseology often [recognized as] a hallmark of a 'broad' arbitration clause," the language that followed worked a limitation on the arbitrable subject matter. In that case, the clause began with "any claim, dispute or controversy . . . that in any way arises from or relates to" – at first signaling a broad application – but continued on with "the goods and/or services you have purchased or are purchasing from us . . . including the . . . negotiation or discussion regarding purchase, discount, price or credit terms" – indicating that arbitration was available only for certain areas of dispute Id. Thus, when "[t]he language of the clause itself is specific to disputes concerning [a definite subject matter], and is not a clause intended to cover all disputes that might arise between the parties," it may properly be characterized as narrow. Duafala v. Globecomm Sys. Inc., 91 F. Supp. 3d 330, 335 (E.D.N.Y. 2015).

Another sign that an arbitration clause is narrow is the inclusion of language in another portion of the agreement that fixes rules for judicial treatment other than arbitration. See id.

5

(holding that an arbitration clause was narrow where a separate section of the agreement provided that "any suit or proceeding related to or arising out of this Agreement shall be brought in New York State Court, Suffolk County or the Eastern District of New York").

In this case, the arbitration clause at issue is narrow. Although the clause uses the broad prefatory phraseology of "any dispute or disagreement," that language is immediately qualified by "regarding this Service." "Service," in turn, is defined in the Service Agreement as "an Electronic Balance Transfer Service . . . using CashEdge Inc." Because this arbitration clause, present only in the Service Agreement, applies exclusively to disputes regarding the service described in the Service Agreement, it was clearly not meant to "cover all disputes that might arise between the parties." See id.

Further supporting this conclusion is that neither the Master Agreement nor the Terms and Charges Disclosures contain an arbitration clause. On the contrary, the Master Agreement contains a separate jury waiver provision, which would be anomalous absent an understanding that other account disputes could be litigated in court. Finally, because even the Service Agreement clearly provides that the customer's "HSBC account(s) will be subject to HSBC's Rules for Consumer Deposit Accounts" (i.e., to the Master Agreement), the logical conclusion is that the Service Agreement's arbitration clause is restricted to disputes regarding the narrow subject of electronic balance transfers using CashEdge Inc.

Defendant does not necessarily disagree that the arbitration clause is narrow, but instead argues that "whether the arbitration provision . . . is 'broad' or 'narrow' is minimally important" because it is "sufficiently broad enough to encompass all of the Plaintiff's claims as they *relate to* contractual terms and disclosures" in the Service Agreement. (Emphasis added.) However, this contention ignores that the characterization of an arbitration clause as either broad or narrow

6

has a significant bearing on whether a collateral issue – i.e., one *related to* but not facially covered by the arbitrable subject matter – should be arbitrated.

As discussed above, if the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. See Cornell Univ. v. UAW Local 2300, 942 F.2d 138, 140 (2d Cir. 1991). This is because, as opposed to broad clauses, for which "arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it,'" see Duafala, 91 F. Supp. 3d at 334 (quoting Louis Dreyfus Negoce, 252 F.3d at 224), "[w]ith narrower clauses . . . a court considering the appropriate range of arbitrable issues must 'consider whether the question at issue is on its face within the purview of the clause,'" McDonnell Douglas Fin. Corp. v. Penn. Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988) (quoting Rochdale Vill., Inc., 605 F.2d at 1295).

To be sure, this difference in analysis between broad and narrow arbitration clauses is not merely one of degree – for whereas a collateral matter is presumed arbitrable under a broad clause, there is no such expectation under a narrow clause. And indeed, in the context of a narrow arbitration clause, the Second Circuit requires a nuanced examination of both the clause's scope and the issue sought to be arbitrated. An example given by the Second Circuit is that "if an arbitration clause covers only employee grievances, the court should not compel arbitration of questions of contract termination." Rochdale Vill., Inc., 605 F.2d at 1295. Such exacting textual scrutiny reflects the Second Circuit's view that "[w]here the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview." See Louis Dreyfus Negoce, 252 F.3d at 224.

In the present case, the dispute concerns defendant's representation in the Terms and Charges Disclosures that "[i]nterest begins to accrue on the Business Day you deposit noncash

7

items (e.g., checks)." Because the Service Agreement does not mention interest at all, plaintiff's claims are, at best, collateral to it. Defendant's suggestion that the claims are arbitrable because "the evidence HSBC will submit *in support of its defense* will necessarily 'touch on' the" Service Agreement demonstrates its misunderstanding of the broad/narrow distinction. First, the "touch matters" standard applies to broad arbitration clauses, not narrow clauses. See id. at 225. Second, the fact that a party's defenses to a claim may implicate arbitrable subject matter says very little about whether the claim is itself arbitrable. Rather, when dealing with narrow arbitration clauses, courts "must determine whether plaintiffs *by their particular allegations* have brought the dispute within the" terms of the arbitrable agreement. See Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 37 (2d Cir. 2002) (emphasis added). Here, a fair reading of the complaint evidences that the allegations do not bring the dispute within the terms of the Service Agreement.

Perhaps the most relevant section of the Service Agreement in favor of arbitration in this case is the one titled "Business Days/Processing Time," which provides that

> [t]he Service will process requests for transfers on business days. Our business days are Monday through Friday. Federal Reserve Bank Holidays are not included. The Electronic Balance Transfer may take up to four business days before it is credited to your HSBC account.

It may be that this portion of the Service Agreement will prove instrumental in the case's defense. But at least on the face of the complaint, the allegations speak only to defendant's representation that interest will accrue on the "Business Day *you* [i.e., the consumer] deposit noncash items" (emphasis added). Plaintiff's complaint does not take issue with the Service Agreement's substance, but with defendant's execution of the Terms and Charges Disclosures, which is not covered by the arbitration clause. The relevant difference here is possibly as subtle as the use of the phrase "you deposit" rather than "we receive"; however, such a delicate

8

distinction is in accord with the Second Circuit's example that, when dealing with narrow clauses, "if an arbitration clause covers only employee grievances, the court should not compel arbitration of questions of contract termination." See Rochdale Vill., Inc., 605 F.2d at 1295.

This conclusion is further reinforced by the complaint's allegation that defendant "told Plaintiff that it is HSBC's policy to not apply interest to deposits . . . until 3-5 business days after a deposit is made." Thus, plaintiff avers that defendant contradicted the Terms and Charges Disclosures without reference to the Service Agreement's content – indeed, the alleged response assumes that a deposit had already been made. But *a fortiori*, even had defendant responded that the Service Agreement negated the same-business-day promise found in the Terms and Charges Disclosures, the Master Agreement clearly states that "[i]f there is a conflict between these Rules and something one of our employees says, the Bank will follow these Rules." Because matters falling under the Master Agreement, which incorporates the Terms and Charges Disclosures, are not covered under the narrow arbitration clause at issue, the same result would follow.

Put in simpler terms, plaintiff's complaint expresses no opposition to the substance of the Service Agreement. Rather, it takes issue with defendant's interpretation of the Master Agreement or, alternatively, with defendant's failure to abide by the Master Agreement. This falls outside the limited realm of a "dispute or disagreement with the other regarding [the] Service."

In the end, the "main concern in deciding the scope of arbitration agreements is to "faithfully reflect the reasonable expectations of those who commit themselves to be bound by [them]." Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 28 (2d Cir. 1995). Given the narrow application of the Service Agreement's arbitration clause and the claims plaintiff brings that may *relate to*, but are not regarding, the relevant "Service," there is no

9

reasonable expectation that plaintiff had pre-committed himself to arbitration for a dispute like this one.

## CONCLUSION

Defendant's [12] motion to compel arbitration is denied.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
      June 15, 2020