UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
JI DONG CHENG,                                              :
                                                            :
                          Plaintiff,                        :   **MEMORANDUM DECISION**
                                                            :   **AND ORDER**
            - against -                                     :
                                                            :   20-cv-1551 (BMC)
HSBC BANK USA, N.A.,                                        :
                                                            :
                          Defendant.                        :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Defendant moves for judgment on the pleadings on plaintiff's claims for breach of contract, a violation of the Electronic Fund Transfer Act ("EFTA"), and a violation of New York General Business Law § 349. For the reasons described below, the motion is granted as to the EFTA claim and otherwise denied.

## BACKGROUND[1]

Plaintiff opened a savings account with defendant bank by online application. According to defendant's Terms and Charges Disclosures (the "Disclosures"), "[i]nterest begins to accrue on the Business Day you deposit noncash items." Noncash items are instruments like checks and wire transfers. That same document defines "Business Day" as "every day except Saturday, Sunday and Federal holidays."

This case concerns two deposits that plaintiff made. First, on Friday, May 31, 2019, plaintiff transferred $100,000 to his account with defendant through an Automated Clearing House ("ACH") network. Plaintiff alleges, however, that defendant "did not apply interest on

---

[1] These facts are taken from the Complaint and assumed to be true for purposes of this motion. See Kolbasyuk v. Capital Mgmt. Servs., LP, 918 F.3d 236, 239 (2d Cir. 2019).

[the] account until, at the earliest, Tuesday, June 4, 2019." Second, on Tuesday, November 26, 2019, plaintiff made another $100,000 ACH transfer to the account, but defendant "did not apply interest on [the] deposit until, at the earliest, Friday, November 29, 2019."

Upon plaintiff notifying defendant of the alleged delay in crediting interest to his deposits, defendant responded that its policy is to not credit interest on deposits until 3-5 business days after they are made. Plaintiff claims that this policy is contrary to the representations contained in defendant's Disclosures. He filed this putative class action for breach of contract and violations of the Electronic Fund Transfer Act and New York General Business Law § 349.

## DISCUSSION

"The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings." Bank of New York v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). The complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**I.      Breach of contract claim**

Contract language is unambiguous "where it has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for difference of opinion." JA Apparel Corp. v. Aboud, 568 F.3d 390, 396 (2d Cir. 2009). In the context of the instant case, the word "deposit" has an unclear meaning that is open to different reasonable interpretations.

Defendant first argues that all of plaintiff's claims should be dismissed because interest properly began to accrue upon receipt of each deposit. Defendant points to the Electronic Balance Transfer Service ("EBTS") agreement, which provides "more information about electronic banking . . . for the services [an account owner] is using." The EBTS states that an "Electronic Bank Transfer may take up to four business days before it is credited to your HSBC account." According to defendant, this explanation – read together with the Disclosures' statement that "[i]nterest begins to accrue on the Business Day you deposit noncash items" – unambiguously establishes that the relevant date for interest accrual to begin is not the date that the account owner initiates an ACH transaction to transfer funds, but instead is the date that the electronic transferred funds are credited to the account and the transaction is completed.

Although defendant's interpretation is not unreasonable, the provision does not unambiguously support it. The Disclosures state that "[i]nterest begins to accrue on the Business Day *you*" – the account owner – "deposit noncash items." (Emphasis added.). The agreement does not state that interest accrues only once the transaction is complete, or once the bank receives the funds, or once the funds are credited to the account, or otherwise suggest that interest accrual relates to some act performed by the bank or during the transfer. Instead, the Disclosures tie the date of interest accrual to the act taken by "you," *i.e.*, the account owner.

The EBTS is a separate agreement and provides little support for defendant's interpretation. The EBTS states that an electronic transfer may take up to four days "before it is *credited* to your" account. It does not state that a *deposit* may take up to four days to be completed, or consummated, or recognized by the bank. And it certainly does not state that interest will not accrue until the Business Day that noncash items are credited to the account.

3

Defendant points to the analysis of an interest accrual date in Eke v. Bank of Am., N.A., No. 09-cv-488, 2009 WL 10688932, at *2 (E.D. Va. Nov. 12, 2009), but that case somewhat supports plaintiff's position. The Agreement in Eke provided that "interest begins to accrue no later than the business day on which [BOA] receive[s] credit for non-cash items, such as checks." Id. at *2. Based on that language, the court found that, although a cash deposit begins to accrue interest the day it is deposited because "that is the day on which the bank receives and credits the full value of the deposit," "non-cash deposits do not begin to accrue interest until the day on which they are properly credited as having been fully and validly received." Id. Here, however, the relevant contractual provision does not contain any mention of when the bank *receives* credit for the non-cash item. Instead, it plainly states that interest accrues on the day "you deposit" the non-cash item.

Defendant's contention that "common sense suggests that interest cannot accrue on funds that have been only provisionally-credited to an interest-bearing account pending verification and valuation," Eke, 2009 WL 10688932, at *2, does not persuade me. The argument ignores the fact that there is a competitive market for banking products and services. Although courts must reject interpretations of provisions that are commercially unreasonable or illogical, see Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, 127 F. Supp. 3d 156, 173 (S.D.N.Y. 2015) (collecting cases), it is perfectly conceivable that an institution might offer a few days of pre-receipt interest to attract deposits. After all, banks used to give away televisions and toasters to attract deposits. I see no impediment to defendant, if it wanted to, applying interest to the account from the date on which a customer notifies the bank of his deposit transaction. Perhaps, at most, defendant could defer withdrawal of that interest until the funds had cleared, but that possibility does not bear on when the interest calculation begins to run.

Plaintiff's proposed interpretation is not any less ambiguous.  Plaintiff's cited cases focus on check deposits and ATM transfers, not ACH transfers, and so are not persuasive.  As used in this context, it is not an unreasonable interpretation of word "deposit" as referring to the act of placing money in the custody of the bank, and not merely the act of requesting an ACH transfer. See United States v. Jenkins, 943 F.2d 167, 174 (2d Cir. 1991) ("the term 'deposit' means a sum of money placed in the custody of a bank") (citing Black's Law Dictionary 395 (5th ed. 1979)). There can be a reasonable difference in opinion as to whether the date "you deposit" funds refers to the date an account holder requests a transfer of funds or the date the bank receives the funds, and thus the provision is ambiguous.

I cannot resolve this ambiguity on the present motion because extrinsic evidence that is not before me may shed light on the parties' actual intent.  See Sarinsky's Garage Inc. v. Erie Ins. Co., 691 F. Supp. 2d 483, 486 (S.D.N.Y. 2010).

**II.     The EFTA**

I must interpret the EFTA according to its plain language and "with reference to the statutory context, 'structure, history, and purpose.'"  L.S. v. Webloyalty.com, Inc., 954 F.3d 110, 115 (2d Cir. 2020).  The purpose of the EFTA is "to protect consumers by providing a 'basic framework establishing the rights, liabilities, and responsibilities of participants in electronic transfer systems.'"  Azose v. Wash. Mut. Bank, 588 F. Supp. 2d 366, 370 (E.D.N.Y. 2008).  The EFTA and its implementing regulations require financial institutions to disclose the terms and conditions of electronic fund transfers in "clear and readily understandable" language, 12 C.F.R. § 1005.4(a)(1); 15 U.S.C. § 1693c(a), and disclose "any charges for electronic fund transfers or for the right to make such transfers." 15 U.S.C. § 1693c(a)(4).  Under the EFTA, financial institutions like defendant must disclose fees or charges applicable to an electronic fund transfer

5

but are not required to disclose every potential consequence of a fund transfer. Cf. Azose v. J.P. Morgan Chase Bank, Nat'l Ass'n, 411 F. App'x 387, 388 (2d Cir. 2011) (defendant bank need not disclose at its ATM fees it imposed on plaintiffs' bank in the course of processing plaintiffs' transactions, even though plaintiffs alleged that their bank passed those fees on to plaintiffs).

Defendant argues that plaintiff's claim under the EFTA must fail because the uncredited interest is not a "fee" or "charge" requiring disclosure. Defendant defines a charge or fee as an amount that constitutes an affirmative debit from the account. Whether uncredited interest can constitute a "charge" requiring disclosure under the EFTA is a matter of first impression in this Circuit.

As support, defendant points to a regulatory provision that lists certain fees that satisfy this definition, such as minimum-balance fees, stop-payment fees, ATM fees, and account overdraft fees. See 12 C.F.R. Part 1005, Supp. I, ¶ 7(b)(5)(1). Defendant also cites Turner v. Gen. Motors Acceptance Corp., 180 F.3d 451 (2d Cir. 1999), for the proposition that the loss of the opportunity to earn interest on a money transfer is an opportunity cost and is not a charge that must be disclosed. At issue in Turner was a provision of the Consumer Leasing Act ("CLA"), which extended the Truth in Lending Act's credit disclosure requirements to consumer leases. The CLA requires a disclosure of "[t]he amount of other charges payable by the lessee . . . [and] a description of the charges." Id. at 454. The Second Circuit concluded that earnings credits and interest earned on deposits are not 'payable' by the lessee and do not constitute a 'liability' imposed upon the lessee" for purposes of the statute. Id. at 456.

Supporting plaintiff's position is Berenson v. Nat'l Fin. Servs., LLC, 403 F. Supp. 2d 133 (D. Mass. 2005), in which the court held that the loss of an opportunity to earn interest constitutes a fee requiring disclosure under the EFTA. Berenson involved the loss of interest due

6

to a delay in transferring funds out of defendant bank pursuant to its bill pay system. The bank had argued that this opportunity cost could not be considered a fee, but the court disagreed. Noting that the purpose of the EFTA is "the protection of customers from the unauthorized or improper use of funds," the court was particularly concerned that the bank continued to earn interest on the customer's money, even though the customer did not. Id. at 150-51. The court found that the failure to disclose the interim loss of interest was a fee requiring disclosure.

Notwithstanding Berenson, I agree with defendant that the loss of an opportunity to earn interest is not a fee or charge requiring disclosure under the EFTA. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." Turner, 180 F.3d at 455-56 (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)). The ordinary meaning of a "fee" or "charge" is a debit for some specific amount that is due or owing in connection with a service. See Black's Law Dictionary (11th ed. 2019) (defining "fee" as a "charge or payment for labor or services"; "charge" as a "[p]rice, cost, or expense"; and "debit" as a "sum charged as due or owing"); Merriam-Webster Dictionary (defining "fee" as "a fixed charge" or "a sum paid or charged for a service"; and "charge" as "the price demanded for something" or "a debit to an account").[2] There is no basis in the statute to expand the meaning of "fee" or "charge" to include the loss of the opportunity to earn interest during the pendency of an ACH transfer request.

Although the Berenson court first reviewed similar definitions as those cited above, the court primarily focused on defendant bank's argument that it should be allowed to earn interest at the expense of its customers because it "offsets the expense of the labor intensive bill payment service, thereby likely reducing the charge to the consumer." 403 F. Supp. 2d at 150-51. Based

---

[2] Available at: https://www.merriam-webster.com/dictionary/fee and https://www.merriam-webster.com/dictionary/charge.

on this argument that "the interim interest lost by customers reduces other fees," the court seemed to conclude that the interest was a stand-in for a fee that would otherwise be charged. Id. That reasoning is not applicable to the present case, but even if it was, I do not believe that the EFTA supports such a broad reading of "fee" and "charge" so as to include a loss of the opportunity to earn interest.

In addition, the loss of the opportunity to earn interest is not a term or condition of an electronic fund transfer that must be disclosed in "clear and readily understandable" language. 12 C.F.R. § 1005.4(a)(1); 15 U.S.C. § 1693c(a). Rather, it is an "obvious opportunity cost inherent in the concept of a deposit." See Turner v. Gen. Motors Acceptance Corp., 980 F. Supp. 737, 742 (S.D.N.Y. 1997), aff'd, 180 F.3d 451 (2d Cir. 1999). The lost opportunity stems from the fund transfer but is neither a term nor condition of it.

The EFTA claim is therefore dismissed.

**III.     General Business Law § 349**

"To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).

First, defendant argues that plaintiff failed to adequately plead causation because he did not allege that he was aware of the Disclosures at issue. Plaintiff requests the opportunity to amend the complaint to more clearly state that he read the Disclosures if I find that it was not adequately alleged, but an amendment is unnecessary. Plaintiff's allegation that he "promptly called HSBC to notify HSBC of its failure to apply interest to deposits beginning on the same Business Day as the deposits were made" after submitting the ACH transfer request is sufficient to raise the plausible inference that plaintiff was aware of that provision of the Disclosures. See

8

Hayden v. Paterson, 594 F.3d 150, 157 n.4 (2d Cir. 2010) (the court should draw reasonable inferences in favor of the nonmoving party in resolving a Rule 12(c) motion).

Second, defendant argues that plaintiff's General Business Law claim should be dismissed as duplicative of his breach of contract claim. If a plaintiff does not allege that a defendant concealed or misrepresented any contractual terms, but merely complains of a defendant's failure to satisfy its contractual duties, a § 349 claim should generally be dismissed. See Costoso v. Bank of Am., N.A., 74 F. Supp. 3d 558 (E.D.N.Y. 2015). Although a plaintiff need not allege damages that are independent of their contractual damages, see Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107 (2d Cir. 2017), to allege a § 349 claim the act or practice complained of must be "misleading in a material respect separate and apart" from the allegations of breach of contract, see Perks v. TD Bank, N.A., 444 F. Supp. 3d 635, 642 (S.D.N.Y. 2020).

Here, plaintiff states a § 349 claim because he alleges defendant used deceptive or misleading language in its Disclosures regarding the date interest accrual would begin, causing a loss to plaintiff. If plaintiff's claim was simply that defendant failed to apply interest on the same Business Day that deposits were made, it would not be sufficiently separate and apart from his breach of contract claim. Such a claim would merely allege that defendant deceptively failed to comply with its contractual obligations. However, I interpret plaintiff's claim as alleging that defendant's consumer-oriented Disclosures contain misleading material terms regarding interest accrual in light of its policy to not apply interest until 3-5 days after an electronic transfer is requested or upon the bank's receipt of the funds. Construed that way, plaintiff states a claim under § 349 claim that is separate from his claim for breach of contract.

## CONCLUSION

Defendant's [12] motion for judgment on the pleadings is granted to the extent of dismissing the EFTA claim and otherwise denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       January 4, 2021