```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                  :
JI DONG CHENG,                                                    :
                                                                  :
                              Plaintiff,                          :    MEMORANDUM DECISION
                                                                  :    AND ORDER
                  - against -                                     :
                                                                  :    20-cv-1551 (BMC)
HSBC BANK USA, N.A.,                                              :
                                                                  :
                              Defendant.                          :
                                                                  :
----------------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff moves for class certification on his claims for breach of contract and a violation of New York General Business Law § 349. He is not an adequate class representative because there is a strong defense to his individual claims that would impede the claims of other class members even though they are not subject to that defense. The motion is therefore denied.

## BACKGROUND

The facts and history of the case are set forth in this Court's decisions on prior motions. See Cheng v. HSBC Bank USA, N.A., No. 20-cv-1551, 2023 WL 4490364 (E.D.N.Y. June 22, 2023); Cheng v. HSBC Bank USA, N.A., 511 F. Supp. 3d 248 (E.D.N.Y. 2021). To summarize, plaintiff Ji Dong Cheng opened a savings account with defendant bank by online application. According to defendant's Terms and Charges Disclosures (the "Disclosures"), "[i]nterest begins to accrue on the Business Day you deposit noncash items." Noncash items are instruments like checks and wire transfers. That same document defines "Business Day" as "every day except Saturday, Sunday and Federal holidays."

This case concerns two deposits that plaintiff made. First, on Friday, May 31, 2019, plaintiff transferred $100,000 to his account with defendant through an Automated Clearing House ("ACH") network. Plaintiff alleges, however, that defendant "did not apply interest on [the] account until, at the earliest, Tuesday, June 4, 2019." Second, on Tuesday, November 26, 2019, plaintiff made another $100,000 ACH transfer to the account, but defendant "did not apply interest on [the] deposit until, at the earliest, Friday, November 29, 2019."

In November and December of 2019, plaintiff made phone calls (the "2019 phone calls") to defendant to address the alleged delay in crediting interest to his deposits. Defendant responded that its policy is to not credit interest on deposits until 3-5 business days after they are made, which plaintiff now claims is contrary to the representations contained in defendant's Disclosures. In the 2019 phone calls, however, plaintiff – allegedly under the impression that defendant had already received the deposited funds – indicated that he understood that interest could not accrue until HSBC had his "money on hand," and that his concern was that HSBC was failing to post the funds and initiate interest accrual upon receipt of those funds, despite the fact that it already had the "money on hand." In one such conversation, plaintiff presented the following hypothetical:

> If I initiate on [the] 25th, right, maybe [the] internal system process at HSBC take[s] three days to send out the credit to [the] other bank and the other bank take[s] another five days to release the money, so there is a gap of eight days. So even though I initiate on November 25th, the money actually post[s] to my HSBC Bank on December 2nd. That's perfect, if the money [is] released from [the] other bank on December 2nd, the HSBC post on December 2nd. That's fine. The thing I am talking about, HSBC receive[d] the money on November 26. It did not post to my account. You already have the money on hand, but you intentionally did not post the account. You wait for three days. I think if I did not call, you[would] probably wait for five days because the representative [told] me it take[s] at least three to five business days for the transaction to post it. Okay? So this is a thing that I have [a] problem with . . . .
>
> And what you tell me, it take[s] three or five business days, [it] absolutely makes no sense. It's just the way that HSBC [tries] to evade attach[ing] the interest that

you owe me. That's the only motivation. That's the only techniques that you try to play.

In that same phone call, plaintiff further emphasized that his concern was that "after HSBC receive[d] the money, [it] did not post it." When an HSBC representative explained that plaintiff should have received an email indicating that his deposit needed to pass through a clearing process before HSBC could post it to his account (and, presumably, begin interest accrual), plaintiff responded:

> I don't care about the email. Okay? All I care is I look at the transaction. I look at when is my money withdraw[n] from other bank, when is the money posted to my HSBC account, okay? Don't tell me HSBC takes five days to post the money after you receive it.

This suit followed. Plaintiff's complaint alleges that under the language of its terms and conditions, HSBC was obligated to credit interest to his account on the day he initiated the deposit or transfer, rather than when it had actually received the money. His claims for violation of New York General Business Law § 349 and breach of contract were brought on behalf of the prospective class. Plaintiff claims that the prospective class consists of at least 100 members and the amount in controversy exceeds $5 million, such that jurisdiction is proper under 28 U.S.C. § 1332(d).[1]

At plaintiff's deposition and in subsequent affidavits, he has attempted to contextualize his comments from the 2019 phone calls. He essentially claims that he was only accepting HSBC's interpretation of the "you deposit" language *arguendo*, as he was under the mistaken impression that HSBC was failing to apply interest to his deposit even after it had his funds on hand. However, when asked at deposition whether he had read the Disclosures before making

---

[1] Plaintiff also claimed that this Court had jurisdiction over the action under 28 U.S.C. § 1331 because the complaint included an Electronic Fund Transfer Act claim, but as noted *infra*, that claim has since been dismissed.

3

his two deposits, plaintiff initially responded that he had not, but later added that he "briefly browse[d] those terms and key points" when opening his account.

Defendant subsequently moved for judgment on the pleadings. I granted the motion as to the alleged violation of the Electronic Fund Transfer Act and denied it as to the breach of contract and GBL claims.

Defendant then moved for summary judgment on the remaining claims. I expressed my view that the 2019 phone calls strongly suggested that plaintiff shared HSBC's understanding that the "you deposit" language meant interest would begin accruing once HSBC had cleared funds on hand, not when he initiated a deposit. As quoted above, in those calls, plaintiff appeared to recognize that HSBC could not apply interest until it was in receipt of his funds, and he stated multiple times that if the delay in applying interest was due to a delay in receiving his funds, "that's perfect" and "that's fine."[2]

I nevertheless denied the motion for summary judgment. Drawing all reasonable inferences in plaintiff's favor, I could not say that there was no triable issue regarding his interpretation of the "you deposit" language. I noted and set aside my doubts about whether a jury would accept plaintiff's story, as a motion for summary judgment is not the proper setting to determine that issue.

Plaintiff now moves to certify two classes in connection with his remaining claims:

**Breach of Contract Class.** All persons in the United States who opened a Direct Savings Account with HSBC between March 25, 2014, through the date of certification and who made noncash deposits into the account using HSBC's online portal on a Business Day for which HSBC did not begin to apply interest

---

[2] I also expressed my reservations about plaintiff's later attempt to extricate himself from the 2019 phone calls and noted plaintiff's banking and litigation history – plaintiff has dozens of bank accounts and has pursued at least two other lawsuits against large financial institutions with the aid of the same counsel. See Cheng v. TD Bank., 21-cv-3282 (E.D.N.Y., filed June 10, 2021, closed June 30, 2023); Cheng v. Equifax Info. Servs. LLC, 20-cv-1636 (E.D.N.Y., filed March 31, 2020, closed March 7, 2023).

4

on the same Business Day the deposits were initiated on the portal or on the first Business Day after a deposit initiated on a Saturday, Sunday, or Federal holiday.

**GBL Class.** All persons in the United States who opened a Direct Savings Account with HSBC between March 25, 2017, through the date of certification and who made noncash deposits into the account using HSBC's online portal on a Business Day for which HSBC did not begin to apply interest on the same Business Day the deposits were initiated on the portal or on the first Business Day after a deposit initiated on a Saturday, Sunday, or Federal holiday.

## DISCUSSION

Rule 23(a) lists four threshold requirements for class certification. The action must involve (1) a class "so numerous that joinder of all members is impracticable," (2) "questions of law or fact" that are "common to the class," (3) "claims or defenses of the representative parties" that "are typical of the claims or defenses of the class," and (4) "representative parties" who "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These four elements are known as numerosity, commonality, typicality, and adequacy. See, e.g., Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011). If all four are present, the action must also satisfy one of the requirements in Rule 23(b).[3]

The party seeking certification "bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). The requirements are more than "a mere pleading standard." Wal-Mart, 564 U.S. at 350. "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Id. That proof often "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause

---

[3] Plaintiff claims that he satisfies Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

5

of action." Id. at 351 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)). The analysis must be a "rigorous" one, and certification is proper only if the court is satisfied that Rule 23's requirements are met. Id. at 350-51 (quoting Falcon, 457 U.S. at 160).

The "adequacy" requirement "focuses on the fitness of purported class representatives to competently discharge the responsibility of litigating the case on behalf of absent class members." In re Vitamin C Antitrust Litig., 279 F.R.D. 90, 99 (E.D.N.Y. 2012). The answer depends on two factors: "(1) class counsel must be qualified, experienced and generally able to conduct the litigation; and (2) the interests of the named plaintiffs cannot be antagonistic to those of the remainder of the class." Dziennik v. Sealift, Inc., No. 05-cv-4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting Marisol A. v. Giuliani, 126 F.3d 372, 378 (2d Cir. 1997)).

"To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff." Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (upholding denial of certification based on inadequacy where representative plaintiff "offered differing accounts about the letters that form the very basis for his lawsuit [which] surely would create serious concerns as to his credibility at any trial"); see also Kline v. Wolf, 702 F.2d 400, 403 (2d Cir.1983) (upholding denial of certification based on inadequacy for both of plaintiff's claims where "testimony on an issue critical to one of [plaintiff's] two causes of action was subject to sharp attack"). "Where the court finds the class representative is not credible, adequacy of representation is absent." Dupler v. Costco Wholesale Corp., 249 F.R.D. 29, 41 (E.D.N.Y. 2008). "To defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems could become the focus of cross-examination and unique defenses at trial, to the detriment of the class. Plaintiffs' testimony or credibility that is subject to attack must be on an issue critical to

one of their causes of action." Savino v. Computer Credit, Inc., 173 F.R.D. 346, 357 (E.D.N.Y. 1997) (cleaned up).

Plaintiff faces serious obstacles to recovery on his individual claims. The statements he made in his 2019 phone calls are compelling evidence that he understood that, just as HSBC claims, he would not begin accruing interest until HSBC had his cash on hand. He repeatedly expressed concerns about HSBC failing to post his deposit to his account when he believed they had his money on hand, but never expressed his supposed belief that interest should have started to accrue as soon as he initiated the deposit, regardless of whether HSBC had the cash on hand. Since plaintiff now seeks to establish that he was misled to believe (and in fact believed) that interest would begin accruing as soon as he initiated a deposit, he faces an uphill battle on a core element of his claims. Plaintiff's path to recovery is therefore obstructed by a key problem that other members of the prospective class do not share. With his understanding of the key terms being the central issue in this case, that makes him an inadequate representative. See Cohen v. Laiti, 98 F.R.D. 581 (E.D.N.Y. 1983).[4]

It is true that "inconsistent deposition testimony in and of itself will not serve as a ground for denial of class certification." Savino, 173 F.R.D. at 357. It is also true that courts "that have denied class certification based on the inadequate qualifications of plaintiffs have done so only in flagrant cases, where the putative class representatives . . . are so lacking in credibility that they are likely to harm their case." Rosario v. Valentine Ave. Disc. Store, Co., No. 10-cv-5255, 2013 WL 2395288, at *7 (E.D.N.Y. May 31, 2013), report and recommendation adopted sub nom.,

---

[4] Plaintiff argues that credibility issues are not necessarily fatal to class certification. Although this is generally accurate, the cases he cites do not help him. Unlike the instant case, those cases involved attacks that were not central to plaintiffs' theory of the case. See Hasemann v. Gerber Prod. Co., No. 15-cv-2995, 2019 WL 2250687 (E.D.N.Y. Feb. 20, 2019), report and recommendation adopted as modified, 331 F.R.D. 239 (E.D.N.Y. 2019). Nor is plaintiff's understanding the result of "mere confusion." See Breitman v. Xerox Educ. Servs., LLC, No. 12-cv-6583, 2014 WL 5364103, at *4 (S.D.N.Y. Oct. 22, 2014). And, as noted infra, the 2019 phones calls are a significant impediment to recovery, apart from any credibility issues related to plaintiff's later statements.

7

2013 WL 4647494 (E.D.N.Y. Aug. 29, 2013). But the 2019 phone calls are not primarily a credibility issue: plaintiff's statements in those calls are facts that sharply decrease his chances of prevailing in this action. Plaintiff's subsequent contradiction of those statements (in an apparent attempt to salvage his claims), his conflicting allegations about reading the Disclosures, and his relevant prior litigation and banking history (see fn. 2, *supra*) are all likely to further weaken plaintiff's claims. But even in a vacuum, the 2019 phone calls harm his case. There is a strong argument that this was a plaintiff who knew precisely what he was doing and that he and HSBC shared the same understanding about what the key term "you deposit" meant.

I have previously held that the phrase "you deposit" is ambiguous, permitting proof of extrinsic evidence. As I stated in denying defendant's motion for summary judgment, that evidence raises a factual issue as to what was really going on inside plaintiff's head when he made the 2019 phone calls. Plaintiff may overcome his challenges and succeed on his individual claims, although he well may lose.

The point is that the Court is not comfortable making plaintiff responsible for the rise or fall of all the other class members' claims. Certifying the proposed class could bind hundreds of absent class members to plaintiff's story and condition their recovery on how well that story holds up. It may be possible that another plaintiff with different facts could bring a class action challenging HSBC's alleged misconduct and adequately represent the proposed class. But Mr. Cheng is not that plaintiff.

Because plaintiff has failed to satisfy the adequacy requirement of Rule 23(a)(4), the Court need not and does not determine whether plaintiff meets any other requirement of class certification. See Moore v. Publicis Grp. SA, No. 11-cv-1279, 2014 WL 11199094, at *7 (S.D.N.Y. May 15, 2014); Lewis v. Johnson, 92 F.R.D. 758, 759 (E.D.N.Y. 1981).

## CONCLUSION

Plaintiff's [88] motion for class certification is denied. Plaintiff is ordered to show cause within ten days of docketing this decision why the Court should retain jurisdiction, given that the Court has denied the motion to certify the class, only state claims remain, and there have been no representations that the amount in controversy on plaintiff's individual claims exceeds $75,000.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
September 12, 2023